IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA

| | | |
|---|---|---|
| Solome F. Hinojosa, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| vs. | ) | Case No: 3:11-cv-70 |
| | ) | |
| Don Redmann, Warden, | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| Respondent. | ) | |

Petitioner Solome F. Hinojosa ("Hinojosa"), an inmate at the James River Correctional Center, timely filed a petition for habeas relief under 28 U.S.C. § 2254 alleging violations of his speedy trial rights and insufficiency of the evidence. (Doc. 1). On initial review of the petition the court ordered service upon the respondent. (Doc. 5). The respondent filed a response and a motion to dismiss the petition alleging, amongst other things, that Hinojosa failed to properly exhaust his claims before the state courts. (Doc. 6, Doc. 7). In response, Hinojosa filed a motion for a stay and abeyance which the respondent opposes. (Doc. 11, Doc. 12).

**Summary of Recommendation**

Hinojosa's claim that he was denied his Sixth Amendment right to a speedy trial and one of his claims of insufficiency of the evidence are procedurally defaulted and barred from federal review. The state court's finding as to Hinojosa's second claim of insufficiency of the evidence is not contrary to clearly established federal law and is not an unreasonable application of federal law. It is **RECOMMENDED** that Hinojosa's motion for a stay and abeyance (Doc. 10) be **DENIED**, the respondent's motion to dismiss (Doc. 7) be **GRANTED**, and the petition for habeas relief (Doc. 1) be **DISMISSED** with prejudice.

## Background

Hinojosa was charged by Information with delivery of methamphetamine within one thousand feet of North Dakota State University ("NDSU"). (Resp. Ex. 2). At the time the Information was filed Hinojosa was serving a sentence at the North Dakota State Penitentiary on a previous conviction. (Resp. Ex. 3). On October 2, 2009, Hinojosa filed a request for disposition of the Information and to have his trial held within ninety days pursuant to the Uniform Mandatory Disposition of Detainers Act codified at N.D. Cent. Code ch. 29-33. (Resp. Ex. 1, Resp. Ex. 3). The state court issued an order that the "case must be scheduled for trial within 90 days of October 2, 2009, or within such additional time as the Court for good cause may grant." (Resp. Ex. 7). Trial was scheduled for December 29, 2009. (Resp. Ex. 8).

On December 15, 2009, the state made a motion to extend the time in which to schedule the trial to 150 days from October 2, 2009 because a witness, a chemist at the state lab, would be on vacation the week of the trial. (Resp. Ex. 12). At a hearing on the motion the court noted that Hinojosa's court appointed attorney discovered a conflict and could no longer represent Hinojosa. (Resp. Ex. 13, p. 3). The court found that good cause existed to grant the state's motion. Id. at pp. 4, 12. The trial was rescheduled for January 26, 2010, and then rescheduled again for February 23, 2010. (Resp. Ex. 14, Resp. Ex. 15).

The trial was continued two additional times, once on a joint motion of the parties, and once on defense counsel's motion. (Resp. Ex. 17, Resp. Ex. 19). The trial began on April 20, 2010. (Resp. Ex. 22). The jury found Hinojosa guilty and he was sentenced to fifteen years of incarceration with five years suspended. (Resp. Ex. 25, Resp. Ex. 27). Hinojosa filed an appeal to the North Dakota Supreme Court which affirmed the judgment of conviction. (Resp. Ex. 33).

**Discussion**

**I.      Speedy Trial**

Hinojosa alleges his Sixth Amendment right to a speedy trial was violated when the state district court found good cause to continue the trial that was scheduled for December 29, 2009.[1] 28 U.S.C. § 2254(b)(1) requires a petitioner to exhaust his state remedies before filing a petition for habeas relief in federal court. The doctrine of exhaustion dictates that "as a matter of comity, federal courts should not consider a claim in a habeas corpus petition until after the state courts have had an opportunity to act." Mellott v. Purkett, 63 F.3d 781, 784 (8th Cir. 1995) (quoting Rose v. Lundy, 455 U.S. 509, 515 (1982)).

"To satisfy the exhaustion requirement, [Hinojosa] must show that he either made a fair presentation of his claims to the state courts or that he has no other presently available state remedies to pursue." Gentry v. Lansdown, 175 F.3d 1082, 1083 (8th Cir. 1999); see also Dixon v. Dormire, 263 F.3d 774, 777 (8th Cir. 2001) (emphasizing that the exhaustion doctrine "turns on an inquiry into what procedures are 'available' under the state law."). "To 'fairly present' his claim, the petitioner must present the same facts and legal theories to the state court that he later presented to the federal courts." Jones v. Jerrison, 20 F.3d 849, 854 (8th Cir. 1994). In addition, petitioner must refer to "a specific federal constitutional right, a particular constitutional

---

[1] Hinojosa also alleges his right to a speedy trial was violated under the North Dakota Constitution, North Dakota Century Code §§ 29-01-06 and 29-19-02, the Uniform Mandatory Disposition of Detainers Act codified at N.D. Cent. Code ch. 29-33, and the Interstate Agreement on Detainers codified at N.D. Cent. Code ch. 29-34. "[E]rrors of state law are not cognizable in federal habeas courts." Nance v. Norris, 392 F.3d 284, 289 (8th Cir. 2004). To the extent that Hinojosa alleges his right to a speedy trial was violated under the federal Interstate Agreement on Detainers, Hinojosa concedes that it does not apply because there was no transfer of Hinojosa from one jurisdiction to another. See Hinojosa's Reply to the Response to the Motion for a Stay and Abeyance at Doc. 15, p. 2.

provision, a federal constitutional case, or a state case raising a pertinent federal constitutional issue" in a claim before the state court. Martin v. Solem, 801 F.2d 324, 330 (8th Cir. 1986).

Hinojosa's claim before the state courts was that pursuant to the Uniform Mandatory Disposition of Detainers Act, N.D. Cent. Code § 29-33-03, Hinojosa's "statutory" rights were violated because he was not brought to trial within ninety days of his request for disposition of the Information. (See Hinojosa's Appellant Brief, Resp. Ex. 29, pp. 6-10). Hinojosa's state appellate brief does not refer to the Sixth Amendment right to a speedy trial, and the North Dakota Supreme Court did not consider Hinojosa's claim within the context of the Sixth Amendment. See Id.; State v. Hinojosa, 2011 ND 116, 798 N.W.2d 634.

Hinojosa notes that his state court appellate brief cites North Dakota cases that rely on Barker v. Wingo, the United States Supreme Court decision that identifies some of the factors which courts should assess in determining whether a defendant's Sixth Amendment right to a speedy trial has been violated. See 407 U.S. 514 (1972). Hinojosa concedes that his state court appellate brief did not cite to the cases in the context of the Sixth Amendment, but states that "it is obvious that a claim under the Uniform Mandatory Disposition of Detainers Act is also a claim under the Sixth Amendment . . . ." (Doc. 15, p. 3).

The North Dakota Supreme Court has held that the Barker v. Wingo factors are the pertinent factors to be considered in determining whether there was good cause to grant an extension or continuance under the Uniform Mandatory Disposition of Detainers Act. State v. Kania, 341 N.W.2d 361, 365 (N.D. 1983); State v. Foster, 1997 N.D. 8, ¶ 7, 560 N.W.2d 194, 196. However, the right to be tried within ninety days under the Uniform Mandatory Disposition of Detainers Act "is a conditional procedural statutory right" and "is not the equivalent of a

4

fundamental constitutional right requiring the personal waiver or consent of the defendant to be effective."[2] State v. Carlson, 258 N.W.2d 253, 258 (N.D. 1977). "Even if state law 'bears some relation to' federal constitutional requirements, 'habeas petitioners must have explicitly cited to the United States Constitution or federal case law in their direct [state court] appeal to preserve federal review.'" Morris v. Norris, 83 F.3d 268, 270 (8th Cir.1996), quoting Luton v. Grandison, 44 F.3d 626, 628 (8th Cir.1994), cert. denied, 513 U.S. 1195 (1995). See also McCall v. Benson, 114 F.3d 754, 757 (8th Cir. 1997) ("[m]ere similarity between state law claims and the federal habeas claims is insufficient"); Duncan v. Henry, 513 U.S. 364, 365-66 (1995) ("If state courts are to be given the opportunity to correct alleged violations of prisoners' federal rights, they must surely be alerted to the fact that the prisoners are asserting claims under the United States Constitution.").

Despite the fact that Hinojosa cited to state cases in his state appellate brief that relied on the Barker v. Wingo factors, the constitutional substance of Hinojosa's claim would not have been apparent given the North Dakota Supreme Court's interpretation of the state statute. In addition, Hinojosa raised facts in his reply to the response to his motion for a stay and abeyance regarding his claim that were not before the state courts.[3] (Doc. 15, p. 9). Hinojosa has not fairly presented his Sixth Amendment claim to the state courts.

---

[2] In habeas actions federal courts are bound by the state court's interpretation of state statutes. Rhode v. Olk-Long, 84 F.3d 284, 290 (8th Cir. 1996).

[3] Specifically, Hinojosa alleges that under the fourth factor enunciated to determine whether there was good cause to grant a continuance or extension - prejudice to the defendant - that he was prevented from receiving good time credit on the sentence he was serving while awaiting trial, he was held under more restrictive terms and was denied privileges, he suffered "anxiety and concern," and the continuance gave the prosecutor additional time to persuade an uncooperative witness to testify at trial. (Doc. 15, pp. 9-10). None of these factual allegations were raised before the state courts in support of his claim. (See Hinojosa's Appellant Brief, Resp. Ex. 29, pp. 6-10).

5

Hinojosa has failed to allege any justification for not raising his claim before the state courts. Hinojosa's Sixth Amendment claim is barred from state court review for misuse of process because he inexcusably failed to raise the claim in the trial court proceedings leading to his judgment of conviction and sentence and on direct appeal. See N.D. Cent. Code § 29-32.1-12(2); Laib v. State, 2005 ND 187, ¶ ¶6-7, 705 N.W.2d 845, 848. Although Hinojosa's Sixth Amendment claim is technically exhausted because he is ineligible for state relief, his claim is nevertheless barred from federal review because Hinojosa did not exhaust his claim properly. Welch v. Lund, 616 F.3d 756, 759 (8th Cir. 2010). "A failure to exhaust remedies in accordance with state procedure results in procedural default of the prisoner's claims." Id. at 758 (citation omitted).

The procedural bar prevents this court from reviewing Hinojosa's defaulted claim unless Hinojosa demonstrates cause and prejudice for the default, or that a miscarriage of justice will result if the court does not address the merits of the procedurally defaulted claim. McCall v. Benson, 114 F.3d 754, 757 (8th Cir. 1997). Hinojosa has not demonstrated cause and prejudice or that this court's failure to consider the claim will result in a fundamental miscarriage of justice. Because Hinojosa's claim is technically exhausted and procedurally defaulted, a stay and abeyance is not appropriate.

**II. Insufficiency of the Evidence**

Hinojosa alleges there was insufficient evidence to prove the sale of methamphetamine took place within one thousand feet of the university building, and he alleges there was insufficient evidence to prove the building was part of a university, namely North Dakota State University. Hinojosa exhausted his claim as to the sufficiency of the evidence regarding the

distance between the sale and the building, but he has not presented to the state courts his claim that there was insufficient evidence to prove the building was part of North Dakota State University. (See Hinojosa's Appellant Brief, Resp. Ex. 29, pp. 10-11).

    A.    <u>Claim Not Presented to the State Courts</u>

On one hand Hinojosa agrees with the respondent that the claim he failed to present to the state courts is procedurally defaulted, but he contends that a miscarriage of justice will result if the court does not address the merits of the claim because Hinojosa is innocent of the crime. (Doc. 15, pp. 10-11). On the other hand, Hinojosa requests a stay and abeyance to allow him to return to the state courts to exhaust his claim, which implies that Hinojosa does not agree that the claim is procedurally defaulted.

Hinojosa failed to allege any justification for not raising his claim before the state courts and the claim is barred from state court review for misuse of process. See N.D. Cent. Code § 29-32.1-12(2); Laib v. State, 2005 ND 187, ¶ ¶6-7, 705 N.W.2d 845, 848. Hinojosa's claim that there was insufficient evidence to prove the building was part of North Dakota State University is procedurally defaulted and barred from federal review unless Hinojosa demonstrates cause for the default and actual prejudice, or that failure to consider the claim will result in a fundamental miscarriage of justice. Coleman v. Thompson, 501 U.S. 722, 750 (1991). Hinojosa has not alleged cause and prejudice.

Hinojosa contends that he is actually innocent and that the miscarriage of justice exception should apply. "This exception requires a habeas petitioner to present new evidence that affirmatively demonstrates that he is innocent of the crime for which he was convicted." Abdi v. Hatch, 450 F.3d 334, 338 (8th Cir. 2006); see also Cassell v. Norris, 103 F.3d 61, 62 (8th

Cir. 1996) ("For actual innocence to lift the procedural bar, [a petitioner] must show that it is more likely than not that, in light of new evidence, no reasonable juror would have convicted him.").

Hinojosa has submitted a document from the City of Fargo Assessment Department dated November 18, 2011 that states:

> The property [where the building is located] transferred from NDSU Development Foundation to Kilbourne Design Group, LLC in September 2003. It subsequently transferred back from Kilbourne Design Group, LLC to NDSU Development Foundation in December 2010. So, the current ownership is NDSU Development Foundation.
>
> The property is used by NDSU for university classrooms and the zoning on the parcel is DMU (Downtown Mixed Use).
>
> This is the former Northern School Supply Building.

(Doc. 15-1). The document does not demonstrate that the building was not leased or utilized by North Dakota State University when the crime occurred. The document only states that the property was privately owned by Kilbourne Design Group, LLC.

Testimony at the trial demonstrated that the building was used by North Dakota State University. (See Resp. Ex. 24, pp. 22, 26, 27, 28, 29, 30, 42, 85, 86). On direct examination a detective referred to the property as the "NDSU campus;" when asked where the "NDSU building" is located he gave the address of the building in question, and he confirmed where "the property for the NDSU building" is located on a map. (Resp. Ex. 24, pp. 22, 26, 27). During cross-examination of the detective Hinojosa's counsel inquired as to the name of the building. (Resp. Ex. 24, p. 29). The detective stated he did not know and Hinojosa's counsel replied, "If I were to tell you it's called Renaissance Hall . . . ." Id. Hinojosa's counsel then asked the detective "what takes place at Renaissance Hall." Id. The detective, although uncertain,

8

responded that it is an "architectural campus." Id. Hinojosa counsel then asked, "And, so it may also include visual arts for NDSU?" Id. The detective replied, "It certainly could, absolutely." Id. Additionally, the detective testified during cross examination that people enter the building on the side that has the NDSU logo. Id. at p. 30. Another detective testified that he was familiar with the NDSU building, that art classes are held in the building, and that NDSU utilizes all three floors of the building. Id. at p. 85. He further stated that in an unrelated matter he arrested a student in the building while the student was attending class. Id. at 86.

Hinojosa has not demonstrated cause and prejudice for the default or demonstrated that this court's failure to consider his claim will result in a fundamental miscarriage of justice. Based on the testimony at trial reasonable jurors could have easily found the building was utilized by NDSU, even in light of the new evidence. Because Hinojosa's claim is technically exhausted and procedurally defaulted, Hinojosa is not entitled to a stay and abeyance.

  B. Exhausted Claim

A federal court cannot grant habeas relief on any claim adjudicated on the merits in state court proceedings, unless adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). A state court decision is "contrary to" federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." Williams v. Taylor, 529 U.S. 362, 412-13 (2000). A state court

9

decision is an "unreasonable application" of federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case."  Id. at 413.  Section 2254(d) imposes a "highly deferential standard for evaluating state-court rulings," Lindh v. Murphy, 521 U.S. 320, 333, n. 7 (1997), "which demands that state-court decisions be given the benefit of the doubt," Woodford v. Visciotti, 537 U.S. 19, 24 (2002) (per curiam).

To be entitled to habeas relief on a claim of insufficiency of the evidence the court must find that "no rational trier of fact could have found proof of guilt beyond a reasonable doubt" based on the record evidence adduced at trial.  Jackson v. Virginia, 443 U.S. 307, 324 (1979). All conflicting inferences that arise from the facts must be resolved in favor of the prosecution. Id. at 326.

Hinojosa alleges there was insufficient evidence to prove that where the sale of methamphetamine took place was within one thousand feet of the university.  Hinojosa contends that the state only proved that the corner of the apartment building was 904 feet from the university building, but that the sale of methamphetamine took place inside the door of the apartment building, which is allegedly 139 feet from the corner of the apartment building.

Hinojosa was charged with "distribution of a controlled substance in or on, or within one thousand feet [300.48 meters] of, the real property comprising a public or private elementary or secondary school, public career and technical education school, or a public or private college or university . . . ." N.D. Cent. Code § 19-03.1-23.1 (1)(a) (2009).  The statute states that the offense must have occurred within 1000 feet of the *real property* comprising a university, although the interpretation of the place of sale, the meaning of the "real property comprising a

university," and how the distance is calculated are matters of state law.

A detective testified that he prepared a map, which was introduced in the state court as an exhibit, by combining a parcel map and aerial photos using a software program called "ArcMap," used by city planners and engineers. (Resp. Ex. 24, pp. 22-24). He testified that he had been trained in the use of the software, the software is "very accurate," the parcel map is accurate by "one half foot to every quarter mile," and the aerial photos are accurate "plus and minus three feet to every mile." Id. at pp. 23-24. The detective testified that the distance between the property lines of each building is 778 feet, the distance from building to building is 904 feet, and the real property is bigger than the buildings. Id. at p. 27. There was no testimony as to the distance between the actual location of the sale of the methamphetamine and the real property line of the university.

Given the evidence adduced at trial, and resolving all conflicting inferences in favor of the prosecution as required by Jackson, a rational trier of fact could have found beyond a reasonable doubt that Hinojosa was guilty of selling methamphetamine within one thousand feet of a university. The state court's finding that the evidence was sufficient to sustain the conviction is not contrary to clearly established federal law and is not an unreasonable application of federal law.

### III. Unasserted Claims

In his response to respondent's sur-reply, Hinojosa indicates he has claims of ineffective assistance of counsel and prosecutorial misconduct and requests a stay and abeyance so he can raise these issues in the state court, or alternatively, he asks to voluntarily withdraw his petition. Because these section 2254 claims have neither been asserted before the state court nor included

11

in Hinojosa's habeas petition before this court, there is no need to grant the stay or allow withdrawal of the petition. This court's disposition of Hinojosa's habeas petition will not in and of itself foreclose these unasserted claims.

## Conclusion

Hinojosa made several state law claims as to violations of his speedy trial rights that are not cognizable in federal court. Hinojosa's Sixth Amendment claim and his claim that there was insufficient evidence to prove the building was part of NDSU are procedurally defaulted and barred from federal review. Hinojosa has not established cause and prejudice for the default, or that a miscarriage of justice will occur if the court does not consider his claims. A stay and abeyance is inappropriate because the claims are barred. The North Dakota Supreme Court's finding that there was sufficient evidence to prove beyond a reasonable doubt that Hinojosa sold methamphetamine within one thousand feet of a university is not contrary to clearly established federal law and is not an unreasonable application of federal law. Accordingly, it is **RECOMMENDED** that:

1. Hinojosa's motion for a stay and abeyance (Doc. 10) be **DENIED**;

2. Respondent's motion to dismiss (Doc. 7) be **GRANTED**;

3. Hinojosa's petition for habeas relief (Doc. 1) be **DISMISSED** with prejudice;

4. The court certify that an appeal from the dismissal of this action may not be taken *in forma pauperis* because such an appeal would be frivolous and cannot be taken in good faith; and

3. A certificate of appealability not be issued with respect to any of the issues raised by Hinojosa in this action.

**NOTICE OF RIGHT TO OBJECT**

Pursuant to Rule 72(a) and (b), Federal Rules of Civil Procedure, and District of North Dakota Local Court Civil Rule 72.1(D)(2) and (3), any party may object to this Report and Recommendation by filing with the Clerk of Court no later than March 13, 2012, a pleading specifically identifying those portions of the Report and Recommendation to which objection is made and the basis of any objection. Failure to object or to comply with this procedure may forfeit the right to seek review in the Court of Appeals.

Dated this 28th day of February, 2012.

/s/ *Karen K. Klein*
Karen K. Klein
United States Magistrate Judge